### ADAMS et al. v. UNITED STATES.

(District Court, D. Massachusetts. May 19, 1921.)

No. 1858.

1. **Collision ⬀77—Lookout should be on forward deck.**

   A steamer's lookout should have been posted on the forward deck, when he could perfectly well have stood there, and not on the bridge, about 100 feet aft the stem.

2. **Collision ⬀81—Full speed in fog, without lookout on forward deck, was gross negligence.**

   It was gross fault for a steamer to maintain full speed, at least eight or nine knots, through a fog, without a properly posted lookout.

3. **Collision ⬀82(3)—Sailing vessels must reduce speed in fog.**

   The rule requiring moderate speed in fog applies to a sailing vessel as well as to steamers, where the sailing vessel could have reduced her speed and still have been properly under command.

4. **Collision ⬀144—Criticism by vessel grossly at fault of other's navigation must be obviously well founded.**

   Criticisms, by the vessel which was grossly at fault, of the navigation of the other vessel, must be obviously well founded, to entitle the former to a decree of divided damages.

5. **Collision ⬀80—Sailing vessel held at fault for carrying full sail in fog and for want of vigilance.**

   A sailing vessel, which collided with a steamer in fog, *held* at fault for proceeding under full sail at a speed of six knots, and for proceeding for a short time after the steamer's lights were discovered, without a lookout and without sounding her fog horn, while the lookout went below to wake the captain, and also for having no officer on deck authorized to give prompt orders as the vessels approached each other.

In Admiralty. Libel by Henry W. Adams and others against the United States. Decree rendered for divided damages.

Blodgett, Jones, Burnham & Bingham, of Boston, Mass., for libelants.

J. Frank Staley, Sp. Asst. Atty. Gen., of Washington, D. C., and Louis Goldberg, Asst. U. S. Atty., of Boston, Mass., for the United States.

MORTON, District Judge. This is a case of collision on the high seas between the Shipping Board steamer Lake Elsah and the Canadian schooner John M. Wood. It occurred between 3 and 4 a. m. on May 23, 1920, about 13 miles off the southeast coast of Nova Scotia, in the vicinity of Little Hope Island. The schooner went down; her crew were saved. There was a fog at the time, and the case presents the various issues which usually arise in such accidents.

[1, 2] The steamer's lookout was posted on the bridge, about 100 feet aft the stem. He could perfectly well have stood on the forward deck; and he ought to have been posted there. The Sagamore, 247 Fed. 743, 159 C. C. A. 601. The steamer had not slowed her engines on account of the fog and was maintaining full speed, at least 8 or 9 knots, which was so clearly immoderate that discussion of the point is unnecessary. For a steamer to proceed at immoderate speed through a fog, without a properly posted lookout, was gross fault on her part; and I so find.

As to the schooner: She was a three-masted vessel about 140 feet long. She was on a windward reach—not close-hauled—with all sail set, and the wind about a point forward of the beam. She did not shorten sail, nor make any effort to reduce speed, because of the fog. There is some disagreement between her witnesses and those on the steamer as to the force of the wind; but I think that the weight of the evidence tends to show that it was a light to moderate breeze, about 20 miles an hour. The schooner was carrying an unusually complete spread of sail; she had the wind in a favorable point; there was no sea to hold her back. Each of her crew who has testified on the point states her speed as about 4 knots. I think it clear, however, that this is an underestimate, not unrelated, perhaps, to the fact that 4 knots is generally recognized as moderate speed for a sailing vessel in a fog. On the other hand, I do not believe that in such weather she was making 8 or 9 knots, as the steamer's witnesses say. I think that she was probably going about 6 knots an hour; and I so find. She could have materially reduced this speed without unduly interfering with her ability to manœuvre.

On her deck were two men, a lookout forward, and a helmsman—who is referred to as a boatswain—at the wheel. When the glare of the approaching steamer's light was discerned, the lookout left his post and went below to wake the captain. Then he went aft and exchanged posts with the helmsman. There was a period of perhaps a minute and a half after the light had been sighted and while the vessels were approaching, during which the schooner was without any lookout. Her fog horn was operated by her lookout, and during this critical interval it was not blown. The captain came on deck immediately on being called, saw the steamer's light, and went below to put on more clothes, leaving nobody authorized to give orders upon the schooner's deck. He was again summoned to the deck by the helmsman after the steamer's green side light was seen, at which time the collision was imminent.

[3] The rule regarding moderate speed in a fog applies to sailing vessels as well as to steamers, although different considerations enter

into the determination of what is moderate speed for a sailing vessel. Numerous cases have held that, where a sailing vessel could have reduced her speed and still have been "properly under command," speeds even less than that here in question were too high and constituted fault. Indeed, The Chattahoochee (C. C. A. 1st Cu.) 74 Fed. 899, 21 C. C. A. 162 and The Robert M. Thompson (C. C. A. 2d Cir.) 244 Fed. 662, 157 C. C. A. 110, deal with situations so similar as to be almost decisive of the present controversy. See, too, The New London (C. C. A.) 271 Fed. 83.

[4, 5] It is obvious, I think, that the steamer, having been grossly at fault, is endeavoring to relieve herself as far as possible by making every conceivable objection to the navigation of the other vessel; and it is well settled that such criticism is viewed with suspicion and disfavor by the admiralty courts, and will be disregarded unless obviously well founded. Nevertheless, it seems to me that for the schooner to carry full sail and maintain unnecessarily a speed of approximately 6 knots through the fog, and to proceed for a period of time which, though short, was vitally important, without a lookout, and without sharply using her fog horn after she had become aware of the presence of the steamer, and to have no officer on deck in charge of her movements, and authorized to give prompt orders as the vessels approached each other, was negligence which cannot be overlooked.

I therefore, not without some regret, have reached the conclusion that the schooner also must be adjudged at fault, as well as the steamer, and there must be a decree for divided damages.